UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL G., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, <br>  COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 21 CV 580 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael G. appeals the Commissioner's decision denying his application for Social Security benefits. For the following reasons, plaintiff's motion for summary judgment [12] is granted, the Commissioner's motion for summary judgment [18] is denied, and the case is remanded for further administrative proceedings.[1]

## Background

In July 2013, plaintiff applied for benefits, alleging a disability onset date of November 25, 2012. [10-1] 21. His claim was denied initially, on reconsideration, and after a hearing. [10-4] 2349. Plaintiff appealed to this Court, and in August 2018 the Court remanded for further proceedings. [*Id.*]. After a second hearing, the claim was denied again. [10-2] 768-867. Plaintiff appealed, and the Court granted an agreed motion to remand for further proceedings. The Appeals Council vacated the ALJ's decision, remanded for a third hearing, and assigned a new ALJ to the case. [*Id.*] 2536-2539. In January 2021, the ALJ again denied plaintiff's claim. [*Id.*] 2349-89. Plaintiff now appeals to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [10-1, 10-2, 10-3, 10-4], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [5, 6].

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). "When reviewing a disability decision for substantial evidence," the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

At step one of his decision, the ALJ found that plaintiff had not engaged in substantial gainful activity between his alleged onset date and December 31, 2018, his date last insured. [10-4] 2352. At step two, the ALJ determined that plaintiff suffered from two severe impairments: fibromyalgia and degenerative disc disease. [*Id.*] 2352-56. At step three, the ALJ ruled that plaintiff's impairments did not meet or equal a listed impairment. [*Id.*] 2357. Before turning to step four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform light work. [*Id.*] 2357-83. At step four, the ALJ found that plaintiff could not perform his past relevant work. At step five, the ALJ concluded that jobs existed in significant numbers in the national economy that plaintiff could perform: mail clerk (120,000 jobs nationally),

injection molder (150,000 jobs nationally), and bench assembler (180,000 jobs nationally). Accordingly, the ALJ found that plaintiff was not disabled.

Plaintiff argues that the ALJ's decision should be reversed and remanded because the ALJ (1) did not properly account for his fibromyalgia, (2) relied on outdated medical opinions in determining the RFC, and (3) failed to include in the RFC determination restrictions relating to his deficits in concentrating and staying on-task. [12] 9-15. The Court agrees that the ALJ's decision rests on a fundamental misunderstanding of the nature of plaintiff's fibromyalgia and the symptoms and limitations it caused, and that a remand is warranted to correct that misunderstanding, which pervades the ALJ's decision.[3]

"[F]ibromyalgia is a syndrome involving chronic widespread and diffuse pain throughout the entire body, frequently associated with fatigue, stiffness, skin tenderness, and fragmented sleep." *Cassey A. v. O'Malley*, No. 1:23-cv-2202-JMS-MG, 2024 WL 3475659, at *4 (S.D. Ind. Jul. 19, 2024) (internal quotation marks omitted). "Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). The Seventh Circuit has cautioned that "[t]he extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment." *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018); *see also Sharon B. v. Kijakazi*, No. 20 C 6910, 2023 WL 5096747, at *4 (N.D. Ill. Aug. 8, 2023) ("objective testing is not a reliable standard by which an ALJ can go about assessing the credibility of a claimant's fibromyalgia claims") (internal quotation marks omitted). Because fibromyalgia is "marked by subjective and fluctuating symptoms," *Gebauer v. Saul*, 801 F. App'x 404, 409 (7th Cir. 2020), patients with fibromyalgia may experience "bad days and good days." *Molly K. v. Saul*, No. 18 C 3415, 2019 WL 3857885, at *6 (N.D. Ill. Aug. 16, 2019).

The ALJ failed to acknowledge or abide by these settled principles in evaluating plaintiff's claim. Multiple treaters and an independent medical expert opined that plaintiff's fibromyalgia precluded essentially all work. Plaintiff's primary care provider, APN Alyssa Wislander, diagnosed plaintiff with fibromyalgia in April 2015. [10-1] 732-33. She opined that plaintiff could perform competitive work in a seated position, or while standing and/or walking, for less than one hour each. [10-2] 755. Nurse Wislander further opined that plaintiff could rarely lift up to five pounds and would rarely be able to grasp, twist, and turn objects or use his arms for reaching in any direction. [*Id.*]. Plaintiff's orthopedist, Bruce McElhinney, diagnosed plaintiff with chronic back and neck pain, which was worse with activity or prolonged sitting, and opined that his prognosis was poor. [10-4] 2342-45. Dr. McElhinney, who saw plaintiff monthly for several years, also opined that plaintiff's pain would frequently be severe enough to interfere with the concentration and attention needed to perform

---

[3] Because this issue is dispositive, the Court need not address plaintiff's other arguments.

even simple work. [*Id.*]. McElhinney further opined that plaintiff could sit, stand, or walk for only two hours during a workday and would require an hourly ten-minute break. [*Id.*]. Dr. Olivia Bajor, an independent medical expert who testified at the second administrative hearing, endorsed the fibromyalgia diagnosis and opined that plaintiff could stand for only 30 minutes at a time but no more than two hours during a workday and walk for only 15 minutes at a time but for no more than one hour during a workday. [*Id.*] 862-64.

The ALJ gave no weight to any of these opinions because, in his view, none was supported by "objective medical evidence." In weighing Nurse Wislander's opinions, the ALJ stressed that "there is no objective medical basis for any of these limitations, either in APN Wislander's records or other medical records. Accordingly, these opinions deserve no weight." [10-4] 2364. Regarding Dr. McElhinney's opinions, the ALJ emphasized again and again that there was "no objective support in the medical records for the limitations" set forth in McElhinney's opinion statement. [*Id.*] 2369; *see also* [*id.*] ("The findings in these treatment records provide no basis for valid opinions on issues such as the specific degree of any interference with attention and concentration due to pain[.]"); [*id.*] 2370 (criticizing McElhinney because "his treatment notes document minimal physical examination and provide no real insight into his functional abilities. Accordingly, Dr. McElhinney has not established an objective basis for his opinions."); [*id.*] 2371 (finding that "the opinions expressed by Dr. McElhinney are deserving of essentially no weight" because McElhinney "has not provide[d] any objective rationale for the opinions he expressed and his prior medical records do not provide any objective basis for the extreme limitations he alleges"). Finally, the ALJ heavily relied on what he deemed to be "normal" objective findings in rejecting the opinions of Dr. Bajor. *See* [*id.*] 2373 (citing "normal" and "mild" results of MRIs taken in 2011 to support ALJ's conclusion that "the medical records do not substantiate such significant limitations on standing and walking secondary to the claimant's chronic pain"); [*id.*] 2374 (findings of "tenderness in various joints, sometimes with associated pain" did not "substantiate fibromyalgia limiting walking to one hour in an eight-hour workday"); [*id.*] (discussing plaintiff's normal gait, full range of motion, and prescribed "conservative treatment modalities" after a 2017 MRI before concluding that "no compelling evidence" supported a finding that "claimant would be unable to stand or walk for six hours of an eight-hour workday"); [*id.*] 2376 (finding "no objective basis for limiting overhead reaching with the left upper extremity" as opined by Dr. Bajor). Then, in summing up his RFC determination, the ALJ reiterated that "the objective medical evidence fails to establish that the claimant's degenerative disc disease and fibromyalgia were anywhere near as functionally limiting as the claimant alleges" and dismissed the "positive" examination findings that were indicative of or consistent with fibromyalgia as merely "subjective." [*Id.*] 2382.

The ALJ's heavy emphasis on the lack of objective medical evidence corroborating as grounds for rejecting this opinion evidence was a serious error that

4

compromised his evaluation of what was likely the most critical evidence in the case. In its June 2020 remand order, the Appeals Council highlighted APN Wislander's, Dr. McElhinney's, and Dr. Bajor's opinions that plaintiff did not have the RFC to perform even light work as significant pieces of evidence that undermined a prior ruling that plaintiff could perform medium work. *See* [10-4] 2537-38. The Appeals Council even explained that these opinions were consistent with one another because each reflected that plaintiff was significantly limited in his ability to stand and walk (among other areas), and that these opinions rested on more than 1,400 pages of medical evidence. *See* [*id*.]. Despite finding that plaintiff's fibromyalgia was a severe impairment, the ALJ weighed the opinion evidence in a way that was directly contrary to how such evidence must be considered in a fibromyalgia case. The purported lack of objective evidence was "not a sound explanation for dismissing [the doctors'] opinions about Plaintiff's capabilities, because the symptoms of fibromyalgia are often subjective, and may not be ruled out by objective tests." *Ryberg v. Berryhill*, Cause No. 2:17-CV-449-JEM, 2019 WL 912175, at *3 (N.D. Ind. Feb. 25, 2019). The fact that Wislander and McElhinney also relied on plaintiff's subjective statements in forming their opinions was not a good reason to reject their opinions, either. *See, e.g.*, [10-4] 2365 (criticizing APN Wislander for completing functional evaluation based on plaintiff's "opinions as to what he could or could not do"). "Fibromyalgia is a disease in which doctors must make an analysis of the patient's condition based on subjective complaints." *Frame v. Colvin*, No. 1:14-cv-234-RLY-DKL, 2015 WL 522011, at *6 (S.D. Ind. Sept. 8, 2015). In discounting the opinions for this reason, "the ALJ failed to recognize that subjective complaints can be the basis of a treating physician's opinion on the severity of fibromyalgia symptoms." *Steven H. v. Kijakazi*, Case No. 21-cv-50257, 2023 WL 2374780, at *8 (N.D. Ill. Jan. 18, 2023).

The Commissioner's brief does not come to grips with the magnitude of the ALJ's error or squarely respond to plaintiff's argument that "[a] misunderstanding of Plaintiff's fibromyalgia, its debilitating effects, and the inherently subjective nature of its related findings" pervaded the ALJ's decision. [12] 9. Instead, the Commissioner argues that the ALJ properly rejected the opinion evidence because it was not supported by objective evidence. *See* [18] 6-7 (Dr. Bajor's opinions); [*id*.] 9 (arguing that there was "no objective basis for any of the limitations opined by Nurse Wislander"); [*id*.] 11-12 (arguing that ALJ properly applied treating-physician rule because Dr. McElhinney's opinions "lacked objective support"). But these arguments are premised on the same error as the ALJ's decision and thus provide no basis for affirming the denial of benefits. *See Steven H.*, 2023 WL 2374780, at *8.

Finally, the Court recognizes that the ALJ's decision rested on additional considerations, including his view that plaintiff was not credible and had exaggerated his symptoms, that Dr. McElhinney's opinions were internally inconsistent, and that plaintiff's ability to perform some activities of daily living was not consistent with his claim to be disabled. Even assuming, arguendo, that substantial evidence supported

5

those conclusions,[4] the Court concludes that the denial of benefits cannot be separated from the ALJ's extensive reliance on the lack of objective evidence to dismiss the opinion evidence. Because the ALJ's weighing of some of the most critical evidence in the case is undermined by a serious methodological error, the denial of benefits has no substantial basis in the evidence. *Accord Yolanda B. v. Kijakazi*, No. 20 CV 3728, 2023 WL 3947722, at *7 (N.D. Ill. June 12, 2023) (remanding where ALJ heavily relied on plaintiff's noncompliance with medication and recommended treatments to craft her RFC, evaluate the opinion evidence, and weigh the credibility of plaintiff's allegations, but ALJ also failed to consider "the fairly obvious possibility that Plaintiff's mental impairments made it difficult for her to remember to take her medication").

---

[4] The Court is compelled to observe that such an assumption is highly dubious when it comes to the supposed inconsistency in Dr. McElhinney's opinions and the ALJ's reliance on some of plaintiff's ADLs. For example, the ALJ observed that McElhinney's opinion that plaintiff needed to walk around for five minutes every hour was inconsistent with his opinion that plaintiff also needed a ten-minute rest break every hour. [10-4] 2367. Whatever inconsistency the ALJ had in mind is lost on the Court and not explained by the Commissioner. *See* [18] 11 (noting ALJ's finding that McElhinney's opinion was inconsistent but ignoring plaintiff's argument that this inconsistency was not explained). In any event, the record amply supports an opinion that plaintiff–whose pain, the ALJ acknowledged, "was worse with . . . prolonged sitting," [10-4] 2367–might need to move about periodically during the workday and that he might also need periodic breaks from work because his pain affected his ability to concentrate. To support his rejection of sitting limitations, the ALJ cited the fact that plaintiff drove himself to the second hearing in this case, a trip that took 90 minutes each way, and sat through the entire hearing, which lasted an hour and 19 minutes. [*Id.*] 2365. But this is a classic example of an ALJ's confusing a claimant's one-time ability to sit for an extended period for evidence of the claimant's ability to perform such an activity repeatedly and without complications during a hypothetical workweek. Of course, the ALJ did not acknowledge plaintiff's testimony that he had no choice but to drive himself to the hearing because his wife, who ordinarily would have driven him, had just had surgery. *See* [10-1] 44. And while the ALJ correctly noted that that "[t]hese period of sitting add up to much more than 'one' hour of sitting," the ALJ seemed to miss that they did not quite add up to the six hours of sitting that the ALJ believed plaintiff was capable of.

## Conclusion

Plaintiff's motion to reverse and remand [12] is granted and defendant's motion for summary judgment [18] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with the Court's ruling.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 12, 2024**